565 F.2d 913
 16 Fair Empl.Prac.Cas. 507, 15 Empl. Prac.
Dec. P 8020,
83 Lab.Cas. P 10,293
 SOUTHBRIDGE PLASTICS DIVISION, W. R. GRACE AND COMPANY,
Plaintiff-Appellee,
v.
LOCAL 759, INTERNATIONAL UNION OF the UNITED RUBBER, CORK,
LINOLEUM AND PLASTIC WORKERS OF AMERICA, et al.,
Defendants-Appellants,
and
Equal Employment Opportunity Commission, Defendant-Appellee.
 No. 75-4416.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 9, 1978.
 
 Harley M. Kastner, Chas. R. Armstrong, Akron, Ohio, Michael H. Gottesman, Robert M. Weinberg, Frank Petramalo, Jr., Julia P. Clark, Laurence Gold, Washington, D. C., for defendants-appellants.
 Chas. E. Sykes, Lincoln, Neb., Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Jr., Associate Gen. Counsel, Beatrice Rosenberg, Chas. L. Reischel, Susan J. Johnson, Paul E. Mirengoff, Equal Employment Opportunity Commission, Washington, D. C., for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of Mississippi.
 Before AINSWORTH, SIMPSON and MORGAN, Circuit Judges.
 MORGAN, Circuit Judge:
 
 
 1
 Southbridge Plastics Division of W. R. Grace Company, the employer, brought this action, pursuant to § 301 of the Labor Management Relations Act,[1] seeking a declaratory judgment that a conciliation agreement that it had entered into with the Equal Employment Opportunity Commission (EEOC) overrode any contradictory provisions contained in the collective bargaining agreement that it had negotiated with the union.[2] The Union[3] counter-claimed seeking arbitration. Relevant facts are as follows: Equal Employment Opportunity Commission (EEOC) had been investigating Southbridge and concluded its investigation with a determination of "reasonable cause" to believe that the seniority provisions of the collective bargaining agreement between it and the Union perpetuated the effects of the employer's prior hiring discrimination against women. To settle this charge with the EEOC, the company signed a conciliation agreement in 1974 stating that certain seniority provisions of the collective bargaining agreement would be superseded by a quota system. Specifically, the conciliation agreement provided that the company would use a quota system to determine layoffs so that the percentage of women employed by the Company would never be reduced by a layoff. This quota system contradicted the standard seniority provision in the collective bargaining agreement that layoffs would be determined by an employee's seniority, not his or her sex. In addition, the conciliation agreement provided that no man could use his seniority to bump any female employee off her preferred shift. According to the collective bargaining agreement, an employee with more seniority could bump any other employee, male or female, with less seniority from his or her shift. The Union objected to this overriding of the provisions of its negotiated agreement and sought arbitration, pursuant to a standard arbitration clause that requires arbitration whenever provisions of the agreement are in conflict.
 
 
 2
 At the trial below, both the EEOC and the Union moved for summary judgments. Holding that the remedies embodied in the conciliation agreement were necessary to cure the effects of past hiring discrimination by the Company and to effectuate the goals of Title VII, the district court granted the EEOC's motion for summary judgment and denied the Union's motion. The court's order stated that the conciliation agreement was binding on all the parties to the action and controlled any conflicting provisions found in the collective bargaining agreement.
 
 
 3
 The Union contends that a recent Supreme Court decision, United States v. International Brotherhood of Teamsters, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), compels this court to reverse the district court's order upholding the conciliation agreement. We agree.[4] In Teamsters, a Title VII case, the Court held that a "bona fide" seniority system, which is a system negotiated and maintained without a discriminatory purpose, is protected by § 703(h)[5] of Title VII, even though that system might perpetuate the effects of an employer's pre-act or post-act discrimination, 431 U.S. at 348 n. 30, 352, 97 S.Ct. at 1861 n. 30, 1863, 52 L.Ed. at 423 n. 30, 426. See also Myers v. Gilman Paper Co., 556 F.2d 758, 760 (5th Cir. 1977) (on petition for rehearing). Likewise, Trans World Airlines v. Hardison, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977), echoed Teamsters in its holding that a discriminatory purpose must be shown before a seniority system can be exempted from § 703(h)'s protection. Id. 432 U.S. at 81, 97 S.Ct. at 2275, 53 L.Ed.2d at 130. Teamsters and Hardison, coupled with cases from this circuit limiting the extent to which a union's collective bargaining agreement can be modified, over its objection, to comply with Title VII, convince us that the conciliation agreement between the Company and the EEOC cannot stand. That is, in Stevenson v. International Paper Co., 516 F.2d 103 (5th Cir. 1975), we held that a seniority system should be enjoined only to the extent necessary to assure compliance with Title VII. Id. 516 F.2d at 118. Subsequently, in Myers v. Gilman Paper Corp., 544 F.2d 837 (5th Cir. 1977), amended and modified on other grounds, 556 F.2d 758 (5th Cir. 1977), we elaborated on the necessity for circumspection in replacing provisions of a collective bargaining agreement with provisions, not agreed to by the union, that are designed to insure the company's compliance with Title VII. Gilman was a Title VII case in which the company, over union objections, entered into a consent decree with minority employees that modified the seniority system agreed to by the company and union. The original opinion in Gilman, in accordance with pre-Teamsters case law in this Circuit, approved some of the seniority changes imposed by the consent decree; after Teamsters, the panel on rehearing vacated even this portion of the opinion. See Myers v. Gilman Paper Corp., 556 F.2d 758 (5th Cir. 1977) (on petition for rehearing).
 
 
 4
 In addition to the opinion on rehearing, the original Gilman opinion is significant for this case in its disapproval of certain portions of the consent decree that were not necessary to assure compliance with Title VII, even under pre-Teamsters standards. Specifically, Judge Gewin, author of that opinion, stated:
 
 
 5
 (R)egardless of past wrongs, a court in considering prospective relief is not automatically empowered to make wholesale changes in agreements negotiated by the employees' exclusive bargaining agents in an obviously serious attempt to comply with Title VII. Allowing such changes without findings of inadequacy in the . . . agreements would conflict with the policies reflected in the National Labor Relations Act, 29 U.S.C. § 151 et seq. ('NLRA').
 
 
 6
 We are reminded that while Title VII expresses an important national policy, it does not exist in a vacuum. Important national policies also emanate from the NLRA, among them the principle that terms and conditions of employment are to be shaped by the employer and the exclusive bargaining representatives of its employers.
 
 
 7
 544 F.2d at 857.
 
 
 8
 In short, Teamsters taken together with Gilman and Stevenson indicate clearly that the conciliation agreement between the Company and the EEOC cannot stand. That is, Gilman and Stevenson hold that terms and conditions of employment, such as seniority, which are agreed to by management and union, can be overturned on a Title VII challenge only to the limited extent necessary to comply with that statute. Teamsters holds that absent a showing of discriminatory purpose in a seniority system, that system is protected by § 703(h) from attack on other Title VII grounds. In this case, there was no showing of any discriminatory purpose inherent in the seniority system. Accordingly, wholesale destruction of this system, as authorized by the conciliation agreement, cannot be permitted.
 
 
 9
 Of course, a determination that the seniority system, itself, cannot be overturned does not preclude, upon the proof of certain facts, an individual female employee being placed in a higher seniority level than her length of employment otherwise would allow. In Franks v. Bowman Transportation Co., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), the Supreme Court held that § 703(h) does not prevent awarding a victim of post-Act discrimination a "position in the seniority system that would have been his had he been hired at the time of his application." 424 U.S. at 765-66, 96 S.Ct. at 1265. In Teamsters, the Court articulated the standards of proof necessary to trigger the Franks' slotting remedy. In the main, these standards require an individual who seeks slotting in a higher seniority bracket to prove that he or she would have applied earlier for a job with the company had it not been for the latter's discriminatory practices and the alleged discrimination victim's consequent unwillingness to engage in a "futile gesture." 431 U.S. at 368, 97 S.Ct. at 1871, 52 L.Ed.2d at 436. The Company and the EEOC urge this court, upon a finding that the conciliation agreement cannot stand, to remand the case to the district court in order that individual women employees may attempt to meet the standards articulated in Teamsters and to be slotted to a higher seniority status than their employment tenure would justify. We reject the suggestion. An action brought pursuant to Title VII, not § 301 of the Labor Management Relations Act, is the proper vehicle in which to adjudicate such questions. We cannot transform this § 301 action into a Title VII claim simply by judicial declaration since certain jurisdictional requirements, not met here, must be established before Title VII claims can be litigated. See, e.g., Electrical Workers v. Robbins & Myers, Inc., 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976); Cutliff v. Greyhound Lines, Inc., 558 F.2d 803 (5th Cir. 1977). Therefore, any female employee who seeks an adjudication of her seniority must do so through the traditional Title VII route.
 
 
 10
 Finally, having determined that the Company and EEOC have not shown the seniority system to violate Title VII, that system, as part of a binding agreement between the Company and the Union, must control here. Accordingly, pursuant to that agreement, we grant the Union's counterclaim seeking arbitration of all grievances arising out of the Company's breach, through its employment of the conciliation agreement, of the seniority provisions contained in the agreement.
 
 
 11
 REVERSED.
 
 
 
 [1]
 29 U.S.C. § 185
 
 
 [2]
 In its amended complaint, the Company named the EEOC as well as the union as a defendant, although its position at trial that the conciliation agreement should supersede the collective bargaining agreement was identical to that of the EEOC's
 
 
 [3]
 Local 759, International Union of Rubber, Cork, Linoleum and Plastic Workers of America
 
 
 [4]
 Indeed, at oral argument the Company conceded that Teamsters required a reversal of the district court's order, although the EEOC would not make that concession. The Company argues, however, that this court should remand this case to the district court for slotting, in accordance with Franks v. Bowman Transportation Co., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976) (discussed infra at pp. 916 - 917)
 
 
 [5]
 § 703(h) of Title VII, 42 U.S.C. § 2000e-2(h) states:
 Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system, or a system which measures earnings by quantity or quality of production or to employees who work in different locations, provided that such differences are not the result of an intention to discriminate because of race, color, religion, sex, or national origin, nor shall it be an unlawful employment practice for an employer to give and to act upon the results of any professionally developed ability test provided that such test, its administration or action upon the results is not designed, intended or used to discriminate because of race, color, religion, sex or national origin.